IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEANDRE S.,                              §
    PLAINTIFF,                       §
                                     §
V.                                       §          CASE NO. 3:24-CV-3151-BK
                                     §
COMMISSIONER, SOCIAL SECURITY            §
ADMINISTRATION,                          §
    DEFENDANT.                       §

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(b) and the parties' consent to proceed before the undersigned United magistrate judge, Doc. 3, the Court now considers this appeal of the denial of Plaintiff's application for Social Security disability benefits. As detailed here, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for further proceedings.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of the final decision of Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). Doc. 1.

In March 2022, Plaintiff filed his application for DIB and SSI, alleging a period of disability beginning in June 2021 due to post traumatic stress disorder ("PTSD"), neuropathy in the right arm, and anxiety. Doc. 11-1 at 74. Plaintiff's claim was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 1 at 1.

**B. Factual History**

Plaintiff, who was 41 years old at the alleged onset of her disability, has at least some college education and past relevant work as a construction equipment mechanic. Doc. 11-1 at 53, 65, 113. Plaintiff's relevant medical history, dating from 2021 to 2024, reflects diagnoses of PTSD, anxiety, depression, and insomnia.[1] Doc. 11-1 at 456-58, 480, 503. The records further show that Plaintiff began exhibiting psychiatric symptoms after he was robbed and shot in June 2021 by a stranger posing as someone wanting to sell a car to him. Doc. 11-1 at 422, 480.

**C. Medical Opinion Evidence**

In February 2022, Plaintiff began psychiatric care with Dr. Meitra Leigh Doty. Doc. 11-1 at 462. Plaintiff reported experiencing intrusive thoughts, nightmares, flashbacks, and dissociative reactions due to the robbery and shooting. Doc. 11-1 at 462. He further reported irritability, reckless or self-destructive behavior, sleep disturbance, poor concentration, and feelings of isolation and distrust of others. Doc. 11-1 at 462. Plaintiff was prescribed an antidepressant and Prazosin for his nightmares. Doc. 11-1 at 463.

In March 2022, Plaintiff reported to Dr. Doty that his panic attacks had decreased since starting medication, but that he was thrashing around in his sleep. Doc. 11-1 at 456. Dr. Doty prescribed Plaintiff Trazodone instead of Prazosin to help him sleep. Doc. 11-1 at 458.

In April 2022, Plaintiff reported that his anxiety was through the roof and that he had been feeling "really overwhelmed." Doc. 11-1 at 443. Plaintiff began psychotherapy and was

---

[1] Although Plaintiff alleged additional physical impairments related to neuropathy resulting from the gunshot wounds to his upper extremity, he challenges only the ALJ's evaluation of his mental impairments. *See* Doc. 14 at 1. Accordingly, the Court focuses on the medical records and evidence pertaining to Plaintiff's alleged mental impairments.

reported as seeming extremely nervous during the session. Doc. 11-1 at 444. However, Plaintiff's counselor also observed that Plaintiff appeared to be motivated for treatment to address his existing mental health issues that "seem to impact day-to-day functioning." Doc. 11-1 at 443.

In June 2022, Plaintiff reported that his anxiety had been high and that he continued to experience panic attacks while on his medication. Doc. 11-1 at 425. In the fall of 2022, Plaintiff reported that he was experiencing panic attacks and hypervigilance every day, especially upon leaving the house. Doc. 11-1 at 478, 555. Plaintiff was started on Propranolol for the panic attacks. Doc. 11-1 at 547.

In November 2022, State Agency Psychological Consultant Sonya Adamo, Psy.D., reviewed Plaintiff's claim and opined that Plaintiff had no limitations in understanding, remembering, or applying information; mild limitations in interacting with others and concentrating, persisting or maintaining pace; and moderate limitations in adapting or managing oneself. Doc. 11-1 at 76. Dr. Adamo also opined that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting, but that he "can adapt to low stress work." Doc. 11-1 at 80.

In January 2023, Plaintiff reported improvements in his mood and anxiety, and was continued on his medications. Doc. 11-1 at 537-39. In August and September 2023, Plaintiff indicated he was having difficulty refilling his medications due to his insurance. Doc. 11-1 at 493, 497. He further reported that he had gotten a job at a fast-food restaurant and that his anxiety worsened due to the customer-facing activities involved. Doc. 11-1 at 497. He stated

that he had lost the job because he could no longer afford the commute, but that he was looking for a "work from home customer service job." Doc. 11-1 at 493.

In December 2023, State Agency Psychological Consultant David Strand, Ph.D., reviewed Plaintiff's claim upon reconsideration found limitations consistent with Dr. Adamo's opinion. Doc. 11-1 at 96. Dr. Strand's opinion differed only in that he noted a moderate limitation in Plaintiff's ability to complete a normal workday and workweek without psychological interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods. Doc. 11-1 at 100. However, in the narrative portion of his analysis, Dr. Strand described mild vocational limitations in all areas except adaptation and concluded that Plaintiff could adapt to a low stress environment. Doc. 11-1 at 101.

**D. Hearing Testimony**

*i. Plaintiff's Testimony*

At the 2024 administrative hearing, Plaintiff testified that he stopped working as a mechanic after he was robbed and shot in the right arm. Doc. 11-1 at 52. Plaintiff further testified that he has PTSD and depression as a result of the shooting and is currently on ten medications to address his anxiety, nerve pain, and sleep disorder. Doc. 11-1 at 57. He averred that the combination of medications makes him feel groggy, like a zombie, and results in mood swings. Doc. 11-1 at 60. Plaintiff stated that he lives with friends and family and that, while he does not do laundry because of the lifting, he tries to do other chores such as vacuuming. Doc. 11-1 at 59.

Plaintiff additionally testified that he tried working as a fast-food manager in 2022 or 2023 for approximately a week, but that his medications and anxiety prevented him from being

4

able to do the job.  Doc. 11-1 at 61.  He stated that his panic attacks and anxiety go from "zero to 100" and that he tries to stay in the house to avoid triggering symptoms of his PTSD.  Doc. 11-1 at 61-62.  He further averred that his depression impacts him significantly on daily basis and that, at times, it feels as if he is being held down by an anchor.  Doc. 11-1 at 62.

### ii. Vocational Expert Testimony

A vocational expert ("VE") testified at the administrative hearing that an individual with Plaintiff's education and work experience who is limited to light work and to understanding, remembering, and carrying out simple and routine instructions and tasks; occasional interaction with coworkers and supervisors; and limited or incidental contact with the general public, could perform jobs in the national economy, including cleaner or housekeeper, routing clerk, and inspector or hand packager.  Doc. 11-1 at 67, 70.

### E. The ALJ's Findings

Following the administrative hearing, the ALJ issued his Hearing Decision utilizing the five-step sequential evaluation set forth in 20 C.F.R. § 416.920 in determining whether Plaintiff was disabled.  At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2026, and had not engaged in substantial gainful activity since June 18, 2021.  Doc. 11-1 at 24.  At step two, the ALJ determined that Plaintiff had severe impairments of major depressive disorder, post-traumatic stress disorder with anxiety, and insomnia.  Doc. 11-1 at 25.  However, the ALJ further found that none of Plaintiff's impairments, singularly or in combination, met or medically equaled any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Doc. 11-1 at 25.

At step three, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with the mental limitations that he can understand, remember, and carry out simple and routine instructions and tasks, but "can have no interaction with the public" and only "occasional interaction with coworkers and supervisors." Doc. 11-1 at 30.

At step four, the ALJ found that Plaintiff did not have the RFC to perform any of his past relevant work. Doc. 11-1 at 39. At step five, relying chiefly on the vocational expert's testimony, the ALJ determined that there were a significant number of jobs in the national economy that Plaintiff could perform. Doc. 11-1 at 40-41. Thus, the ALJ concluded that Plaintiff was not disabled under the Act. Doc. 11-1 at 41.

## II. APPLICABLE LAW

The definition of disability under the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do his past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi,* 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the

burden on the first four steps.  *Id.* (citation omitted).  If the claimant meets his burden, the burden then shifts to the Commissioner to "prove the claimant's employability."  *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence."  *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted).  The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

## III. ANALYSIS

On appeal, Plaintiff argues that the ALJ's RFC finding relating to his mental limitations is not supported by substantial evidence.  Specifically, Plaintiff contends that (1) the ALJ impermissibly relied on his own lay interpretation of the medical evidence in determining Plaintiff's mental RFC; and (2) the ALJ failed to adequately evaluate the opinion of Dr. Strand. Doc. 14 at 1.

Because the Court concludes that remand is required on the first issue, it need not reach Plaintiff's second argument.

### A. The ALJ Impermissibly Relied on his Own Interpretation of Medical Evidence in Assessing Plaintiff's Mental RFC.

Relying on *Ripley v. Charter*, 67 F.3d 552 (5th Cir. 1995), Plaintiff contends that, because the ALJ rejected the only medical opinion evidence addressing the functional effect of his mental impairments, the ALJ erred in relying on his own interpretation of the remaining evidence to formulate the RFC. Doc. 14 at 9. Defendant responds that the ALJ properly based Plaintiff's mental RFC on his interpretation of the entire record, including both medical and non-medical evidence. Doc. 18 at 6-7.

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ makes an RFC determination based on all the relevant medical and other evidence in the record," *Gonzales v. Colvin*, No. 3:15-cv-685-D, 2016 WL 107843, at *9 (N.D. Tex. Jan. 11, 2016) (citing 20 C.F.R. § 404.1545(a)(1)), and "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Fontenot*, 661 F. App'x at 277 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

While an ALJ usually "should request a medical source statement describing the types of work that the applicant is still capable of performing," the absence of such a statement does not automatically render the record incomplete. *Ripley*, 67 F.3d at 557 (citing 20 C.F.R. § 404.1513(b)(6)). Where no medical statement exists, the inquiry focuses on whether the ALJ's decision is supported by substantial evidence in existing record. *Id.; accord Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (citation omitted). However, evidence describing the claimant's medical conditions is alone insufficient to support

8

an RFC determination.  *Moreno v. Astrue*, No. 5:09-CV-123, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010) (Koenig, J.) *rep. & rec. adopted*, 2010 WL 3025519 (N.D. Tex. Aug. 3, 2010) (citing *Ripley*, 67 F.3d at 557).  Accordingly, an ALJ may not—without medical opinions—derive a claimant's RFC solely from the existence of medical conditions and the claimant's subjective statements.  *Williams v. Astrue*, 355 F. App'x 828, 832 n. 6 (5th Cir. 2009).

In this case, the ALJ concluded that Plaintiff's mental RFC limited him to understanding, remembering, and carrying out simple tasks and instructions, occasional interaction with coworkers and supervisors, and no interaction with the public.  Doc. 11-1 at 39.  However, the ALJ neither identified an acceptable medical opinion supporting these limitations nor adequately explained how the remaining evidence substantiates them.

Critically, the ALJ rejected the November 2022 and December 2023 opinions of State agency psychological consultants Dr. Sonya Adamo and Dr. David Strand.  Doc. 11-1 at 39. Both consultants opined that Plaintiff had no limitations in understanding remembering or applying information, and only mild limitations in interacting with others and in concentrating, persisting, and maintaining pace.  Doc. 11-1 at 39 (citing Doc. 11-1 at 87, 96, 108).  The ALJ found these opinions unpersuasive, explaining—albeit in a conclusory fashion—that "they were inconsistent with the overall medical record," that additional evidence had subsequently been submitted, and that the ALJ adopted "a different interpretation of the medical evidence that was before them."  Doc. 11-1 at 39.  Although the ALJ rejected these opinions, he ultimately assessed an RFC that included *greater* limitations than those identified by either Dr. Adamo or Dr. Strand. *Compare* Doc. 11-1 at 87, 96, *with* Doc. 11-1 at 39.  According to the ALJ, "[t]he record as a

9

whole shows a broader range of symptoms affecting memory and the ability to interact with others." Doc. 11-1 at 39.

Having rejected this opinion evidence, the ALJ relied on his own review of Plaintiff's testimony, prior statements, and treatment records in formulating the RFC. *See generally,* Doc. 11-1 at 26-29. For example, regarding Plaintiff's ability to interact with others, the ALJ cited records showing that Plaintiff "has interacted well with his treatment providers," and has "often been described as calm and/or cooperative." Doc. 11-1 at 27. The ALJ also noted that, in an August 2022 function report, Plaintiff stated that he lived with friends while also reporting that he had difficulty getting along with others. Doc. 11-1 at 28. Additionally, the ALJ referenced Plaintiff's September 2023 statement that he was "looking for a work from home customer service job." Doc. 11-1 at 28 (citing Doc. 11-1 at 493). The ALJ ultimately concluded that "[o]verall, such evidence indicates no more than a moderate limitation in this area." Doc. 11-1 at 28.

With respect to Plaintiff's ability to understand, remember, and apply information, the ALJ's analysis was similar. The ALJ cited multiple records showing that Plaintiff's mental status examinations consistently reflected intact or normal memory, and thought processes that were intact, normal, logical, and/or well organized. Doc. 11-1 at 27. The ALJ also noted that, in August 2022 and November 2023 function reports, Plaintiff indicated that he could follow written instructions "okay" and spoken instructions "okay" or "well." Doc. 11-1 at 28 (citing Doc. 11-1 at 278, 301). The ALJ further observed that Plaintiff's September 2023 statements— that he had lost his job because he could not afford his commute and was seeking a home customer service job—suggest that he did not stop working due to any problems understanding,

remembering, or applying information.  Doc. 11-1 at 27.  Accordingly, the ALJ concluded that the evidence indicates no more than a moderate limitation in this area.  Doc. 11-1 at 27.

While the ALJ was free to reject the medical opinion evidence of the State's psychological consultants, "he cannot then independently decide the effects of Plaintiff's . . . impairments on [his] ability to work[.]"  *Shugart v. Astrue,* No. 3:12–CV–1705, 2013 WL 991252, at *5 (N.D.Tex. Mar.13, 2013).  After rejecting the only medical opinions addressing the functional effects of Plaintiff's mental impairments, the ALJ relied solely on his own interpretation of treatment notes, mental status examination, and Plaintiff's subjective reports. *See generally,* Doc. 11-1 at 26-29.  But, while these sources describe the existence and general severity of Plaintiff's symptoms, they did not assess how those symptoms translate into work-related limitations.  By relying on this evidence alone in crafting the RFC, the ALJ impermissibly substituted his lay judgment for medical expertise in violation of *Ripley.  See, e.g., Medendorp v. Colvin*, No. 4:12-CV-687, 2014 WL 308095, at *6 (N.D. Tex. Jan. 28, 2014) (Means, J.) (ALJ improperly relied on his own medical judgment where the only medical opinion addressing the functional effects of the impairment on the claimant's ability to work was rejected, and no other medical evidence supported the ultimate RFC); *Cooper v. Comm'r of Soc. Sec.,* No. , 2022 WL 4538460 (N.D. Tex. July 15, 2022) *rep. & rec. adopted*, 2022 WL 4538460 (N.D. Tex. Sept. 27, 2022) (ALJ committed *Ripley* error by including limitations in the RFC despite record containing vast amount of medical evidence of impairments because all opinions

addressing functional effect of those impairments were rejected).  Consequently, The ALJ's mental RFC determination is not supported by substantial evidence.

### B. The ALJ's Error Was Not Harmless.

Nevertheless, the existence of an error does not automatically result in reversal of the Commissioner's decision.  Rather, "[w]hen an ALJ commits a *Ripley* error, remand 'is appropriate only if [the claimant] shows that he was prejudiced." *Fitzpatrick v, Colvin*, No. 3:15-CV-3202, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016) (Fitzwater, J.) (quoting *Ripley*, 67 F.3d at 557).  "Prejudice can be established by shown that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n. 22.

Here, the ALJ rejected Dr. Adamo and Dr. Strand's opinions, in part because additional evidence was submitted which suggested a broader range of symptoms affecting Plaintiff's memory and the ability to interact with others.  Doc. 11-1 at 39.  However, once the ALJ determined that these opinions no longer reflected Plaintiff's mental limitations, "it became incumbent upon [him] to obtain an expert medical opinion about the types of work activities that Plaintiff could still perform" in light of the new evidence.  *Shugart*, 2013 WL 991252, at *6; *Alondra E. F. v. Kijakazi*, No. 3:20-CV-2787, 2022 WL 605301, at *5 (N.D. Tex. Mar. 1, 2022) (Horan, J.).  Had the ALJ done so, his RFC determination could conceivably have reflected different or greater limitations.  *See Alondra*, 2022 WL 605301, at *5 (remanding where ALJ recognized evidence suggesting *greater* mental limitations than those noted in the medical opinions of record, because an updated medical opinion accounting for those changes might have supported greater limitations than those ultimately found).  This is particularly true in light of

reports post-dating at least one medical opinion which indicate that Plaintiff reported experiencing panic attacks three times a day. Doc. 11-1 at 504. Because such evidence could have changed the medical expert's opinion, and in turn, altered the ALJ's RFC determination, the ALJ's failure to obtain updated medical opinion evidence prejudiced Plaintiff. *Alondra,* *2022 WL 6055301, at \*5.* Remand is therefore required on this issue.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion.

**SO ORDERED** on March 30, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE